The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax 1-877-666-4456
ryanlozar@gmail.com



FEBRUARY 23, 2018

Re:   Luis Soto v. City of N.Y., et al., No. 16 Civ. 5927 (AJN) (DF)

Dear Judge Freeman:

I represent Plaintiff Luis Soto in the above-captioned Section 1983 action alleging, inter alia, excessive force and malicious prosecution claims. The case has been referred to Your Honor for discovery. I write to request a conference relating to discovery disputes which I herein describe, and for discovery extension. Discovery is presently set to close on February 28, 2018. As detailed below in Section II, Party depositions will be completed by that date; Plaintiff's request is motivated by residual discovery issues that Party depositions have either unexpectedly identified or ripened.

I.   **Brief Summary Of Plaintiff's Case.**

On July 5, 2014, Plaintiff Luis Soto was at the corner of W. 193d Street and St. Nicholas Avenue at an Independence Day block party. Defendant Jason Stefano claims to have seen Soto there in possession of a Sunny-D-Lite sized drink container while holding a pizza box. Stefano claims that he believed this was an "open container" of something called "nutcracker" and stopped Soto. Soto claims the stop was unlawful, and he left the scene.

On July 6, 2014, Defendants returned to the same location. On that day, various neighbors and their friends were again gathered and there was a barbecue. Stefano saw Soto, recognized him from the previous night's encounter, and directed Defendants to arrest him. Defendants used excessive force upon Soto first on the sidewalk. Then, they used excessive force upon him again outside of the 34th Precinct prior to taking him inside. Soto was hospitalized with concussive head trauma and other injuries.

It is Soto's contention that Stefano directed his July 6 arrest without probable cause to retaliate against Soto for leaving the unlawful July 5 stop. Some Defendants testified that they knew nothing about why they arrested Soto until well after Soto was arrested, and that Soto's arrest was on Stefano's direction. At arraignment, Soto learned that Stefano told prosecutors falsely that Stefano witnessed Soto engage in a hand-to-hand transaction on July 6, and that Defendants later found abandoned cocaine in the police van and attributed possession to Soto. Soto denies this, and the charges against him were later dismissed.

II.   **Discovery To Date, And Related Disputes That Have Only Recently Arisen During Party Depositions.**

The Parties have exchanged paper, video and audio discovery to date. Soto was deposed in November 2017. As of this writing, three of the four Defendants have been deposed (the third was taken just yesterday), and the fourth Defendant is scheduled for deposition on February 26, 2018.

Defendants' depositions have given rise to discrete, residual discovery disputes relating to exceedingly similar-in-nature and close-in-time allegations of misconduct similar to the rights violations claimed by Plaintiff in this case. As the Court will recall from previous conference in this case, Plaintiff contends that the unique volume, temporal clustering and factual nature of the similar allegations of misconduct against the named Defendants are relevant and admissible as FRE 404(b) evidence relating to Plaintiff's individual-liability claims, FRE 608 evidence relating to Plaintiff's individual-liability claims, evidence in support of Plaintiff's Monell claim, and more.[1]

1. Testimony/records relating to DADS proceedings. Various Defendants have had allegations of similar misconduct substantiated against them. After these substantiations, municipal officials prepared and served related charges and specifications for administrative trial. Defendants object to testimony being taken and records being produced relating to these charges' resolutions and/or related sanctions because the cases have not been "finalized." It is not clear what this means exactly, but Plaintiff contends that insofar as the charges were served on these Defendants in some instances more than two years ago, whatever administrative prosecutorial and tribunal records are likely to already be over. Furthermore, even if they remain open, the files will contain records aplenty that are factual in nature and must be produced.

   I note that for at least one of the Defendants, the matter was sufficiently serious to give rise to a prosecutorial wall against the use of his testimony to support criminal charges going forward. This sounds final enough to me, yet some vague privilege is still being invoked to withhold the file in its entirety.

   In conference with the Court during deposition and on the deposition record, the Parties agreed to raise this matter by motion.

2. During Beattie's deposition, Plaintiff learned for the first time about an excessive-force litigation that is going to trial with this Defendant as a named party on February 28, 2018. Despite the fact that the case is going to be litigated in a public forum within days, Defendants take the position that some unidentified privilege exists that functions to insulate Beattie from having to testify about it, and that insulates Corporation Counsel from producing related factual records. In conference with the Court and on the deposition record, the Parties agreed to raise this dispute by motion.

3. Thomas's deposition, which occurred just yesterday, highlighted a serious gap in existing paper discovery as Thomas disavowed personal knowledge as to how certain

---

[1] As just one example of how remarkable the factual and temporal convergences are here, two civilians made excessive-force complaints against a subgroup of these Defendants arising from two wholly unrelated incidents occurring two weeks prior to the Soto incident during a single shift this subgroup of Defendants were working as a team.

significant personnel events resolved. His testimony thus highlighted my need to obtain supplemental, targeted discovery of that information where I reasonably (I think reasonably) expected Thomas to know how certain matters resolved given their nature and the length of time they remained pending. Accordingly, Plaintiff will seek targeted supplemental production to fill in these gaps. As to this category of records, the Parties may have no dispute, but I include it in this letter in the event it remains open at the time of any conference the Court may set.

4. The Parties dispute whether Defendants must testify and/or produce information relating to allegations of evidence-discrepancy misconduct made against them in connection with arrest-evidence vouchering, for example when the NYPD Lab reported such a problem. In particular, one Defendant had a serious problem in this respect near in time to Plaintiff's July 6, 2014, arrest. Just prior to that date, the Defendant "inaccurately" vouchered evidence to the NYPD Lab and was sanctioned. At deposition, this Defendant would not answer questions regarding additional evidence-discrepancy issues—not because they did not exist, but because it was "irrelevant." Plaintiff argues that this information is relevant to his claims in this case because Defendants—and, coincidentally, this particular Defendant played a central role in this part of the story—falsely stated to prosecutors that Soto possessed an allegedly abandoned controlled substance allegedly found in the police van.

### III.   Pending Subpoena Responses And Likely Motion Practice With Third Party

In addition, Defendants' depositions have revealed Plaintiff's need to seek supplemental records from non-party District Attorney's Office, New York County. In this case, one or more Defendants testified against Soto at grand jury. Soto was indicted on charges that were more limited than his arrest charges, and even those charges were later dismissed. As the Court knows, grand-jury law requires that I first pursue alternate avenues of gaining grand-jury information before I can seek to meet my client's burden in requesting minutes. I have tried, but during depositions not a single Defendant admitted to testifying at grand jury and therefore, suffice to say, not a single Defendant could or would provide information about what happened during those proceedings.

Accordingly, I informed Defense Counsel earlier this month that I intended to subpoena the minutes if Defendants' depositions continued that trend. The most recent one—Thomas's—did continue that trend. Insofar as Thomas also disavowed any recollection of grand jury, today I prepared and electronically served Defense Counsel with DANY subpoenas seeking grand jury records, cell-phone-search-warrant affidavit records (about which Defendants also disclaimed knowledge), and the aforementioned DANY records relating to the one Defendant being barred from testifying in support of criminal charges. I will serve the subpoenas on DANY early next week.

I will refrain from briefing the grand-jury issue in full here, as I imagine that there will be a separate opportunity. However, I mention the emergence of the issue, and yesterday's

deeper ripening of the factual record relative thereto, because it relates to Plaintiff's request to extend discovery to address final and discrete discovery issues, of which this is one.

### IV. Conclusion.

In light of the foregoing, Plaintiff respectfully requests a conference with the Court to discuss the above-described matters more fully, and extension of discovery to a date as determined during the conference.

Sincerely,

*[signature]*

Ryan Lozar<br>
Attorney for Plaintiff